[Cite as *State v. Mitchell*, 2022-Ohio-3176.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

v.

RYAN D. MITCHELL

    Appellant

C.A. No.    21CA0071-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    20CR0666

DECISION AND JOURNAL ENTRY

Dated: September 12, 2022

CARR, Judge.

**{¶1}** Appellant, Ryan Mitchell, appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

**{¶2}** The Medina County Grand Jury indicted Mitchell on one count of domestic violence in violation of R.C. 2919.25(A)/(D)(3), a felony of the fourth degree. The alleged victim was K.R., Mitchell's longtime girlfriend. Mitchell and K.R. had two children together. Mitchell pleaded not guilty to the charge at arraignment. The matter proceeded to a jury trial where Mitchell was found guilty. The trial court sentenced Mitchell to an 18-month prison sentence. Mitchell was given credit for 71 days served.

**{¶3}** On appeal, Mitchell raises three assignments of error. This Court rearranges Mitchell's assignments of error to facilitate review.

II.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGE LEVIED AGAINST MR. MITCHELL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

**{¶4}** Mitchell contends that the trial court failed to present sufficient evidence to convict him of a fourth-degree felony domestic violence charge. Specifically, Mitchell contends that his prior battery conviction in Florida did not qualify to enhance the degree of the offense pursuant to R.C. 2919.25(D)(3). This Court disagrees.

Background

**{¶5}** At trial, the State presented evidence supporting the following narrative. During the noon hour on September 17, 2020, Officer Markinos responded to a domestic violence call at an apartment in Brunswick Hills. Officer Markinos arrived on the scene and located K.R, who was very distraught. Officer Markinos asked K.R. to fill out a written statement. Officer Markinos noticed that K.R. had red marks and slight bruising around her neck area. Officer Markinos learned that the incident occurred approximately 10 hours earlier, around 2:30 AM. Officer Markinos observed that, based on his training and experience, the marks on K.R.'s neck appeared to be the result of strangulation. Based on the information that K.R. provided to Officer Markinos, he ran a search for Mitchell in the law enforcement database. Officer Markinos learned that Mitchell had a prior history of abuse with K.R. Officer Markinos ultimately determined that it was necessary to charge Mitchell with domestic violence. Mitchell was not at the scene.

**{¶6}** At trial, K.R. explained she had been suspicious that Mitchell was cheating on her so she went through his phone. K.R. testified she had been involved with Mitchell for seven years

and that he was the biological father of her two children. K.R. became upset about what she found in Mitchell's phone so she threw the phone and hit Mitchell in the face. Mitchell and K.R. began shouting and shoving each other. At one point Mitchell was on top of K.R. attempting to hold her down. K.R. and Mitchell wrestled each other across her room. K.R. testified they were both enraged and they "were physically assaultive of each other." Although K.R. stated at trial that she was testifying against her wishes, she acknowledged that she filled out a statement after the incident indicating that Mitchell held her down, punched her multiple times in the back, and choked her. K.R. further indicated in the statement that Mitchell told her she did not deserve her kids and did not deserve to live.

{¶7} Notably, prior to trial, Mitchell had filed a motion in limine arguing that the State could not introduce evidence of his prior battery conviction in Florida for enhancement purposes pursuant to R.C. 2919.25(D)(3). The trial court held a short hearing on the motion. Although Mitchell acknowledged that his prior conviction constituted an offense of violence, he argued the conviction was inadmissible because there was nothing indicating that K.R. was the victim. Mitchell argued that while the amended information in the Florida case identified K.R. as the victim, there was nothing to that effect in the judgment entry. The trial court permitted the State to call K.R. to testify at the hearing. K.R. testified she was in fact the victim in the Florida case. The trial court then denied the motion and indicated that Mitchell's battery conviction in Florida could be admitted for enhancement purposes.

{¶8} At trial, K.R. testified she had been involved with Mitchell for seven years and that they had two children together. K.R. testified that her relationship with Mitchell had been violent in the past. With respect to the altercation in Florida in December 2015, K.R. explained she ended

up in the hospital after Mitchell choked and punched her. Mitchell was struggling with addiction at the time.

{¶9} The parties stipulated that Mitchell's battery conviction in Florida was an offense of violence and that K.R., who was the victim, was a family or household member at the time of the incident.[1] With no objection from the parties, the trial court admitted the amended information charging Mitchell with battery in Sarasota County, Florida, as well as a copy of an order of probation evidencing that Mitchell entered a plea of nolo contendere to battery and was found guilty. The State also introduced a copy of Florida's battery statute, which stated, "[t]he offense of battery occurs when a person * * * [1] [a]ctually and intentionally touches or strikes another person against the will of the other; or [2] [i]ntentionally causes bodily harm to another person[.]"

Discussion

{¶10} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶11} Mitchell was convicted of domestic violence in violation of R.C. 2919.25(A)/(D)(3). R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt

---

[1] This stipulation was incorporated into the jury instructions.

to cause physical harm to a family or household member. R.C. 2919.25(D)(3) provides, in pertinent part, as follows:

> [I]f the offender previously has pleaded guilty to or been convicted of domestic violence, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to domestic violence, a violation of section 2903.14, 2909.06, 2909.07, 2911.12, 2911.211, or 2919.22 of the Revised Code if the victim of the violation was a family or household member at the time of the violation, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to any of those sections if the victim of the violation was a family or household member at the time of the commission of the violation, or any offense of violence if the victim of the offense was a family or household member at the time of the commission of the offense, a violation of division (A) or (B) of this section is a felony of the fourth degree[.]

{¶12} In support of his sufficiency challenge, Mitchell maintains that the State failed to demonstrate that he was previously convicted of domestic violence or a substantially similar offense for enhancement purposes. Mitchell asserts that "[t]here was no finding in this prior [Florida] case that [Mitchell] was convicted of domestic violence."

{¶13} Mitchell's argument is without merit. R.C. 2919.25(D)(3) provides a number of ways that the degree of a domestic violence charge may be enhanced. The statute provides that domestic violence will be charged as fourth-degree felony if the offender previously has been convicted of "any offense of violence if the victim of the offense was a family or household member at the time of the commission of the offense[.]" *Id*. Here, the parties stipulated that Mitchell's battery conviction in Florida was an offense of violence and that K.R. was a family or household member at the time of the incident. Furthermore, K.R. testified that she ended up in the hospital after Mitchell punched and choked her during the Florida incident. Both K.R.'s testimony regarding the incident as well as the language of Florida's battery statute further confirm that Mitchell's prior conviction was for an offense of violence. It follows that the evidence presented

at trial was sufficient to support a finding that Mitchell was guilty of fourth-degree felony domestic violence.

**{¶14}** The third assignment of error is overruled.

## ASSIGNMENT OF ERROR II

MR. MITCHELL'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE [] IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

**{¶15}** In his second assignment of error, Mitchell contends that his conviction was against the manifest weight of the evidence. This Court disagrees.

**{¶16}** In determining whether a criminal conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

**{¶17}** Mitchell's foremost contention is that the weight of the evidence does not support the conclusion that he engaged in any conduct that would constitute domestic violence. Mitchell points to K.R.'s testimony at trial that she was the aggressor during the incident and that Mitchell merely attempted to calm her down.

{¶18} K.R. was clear in her testimony that she had planned not to cooperate because she wanted the charges against Mitchell to be dropped. There is no dispute that a physical altercation occurred between Mitchell and K.R. K.R. indicated that she threw Mitchell's phone at him after discovering messages that angered her. Mitchell and K.R. then engaged in a heated confrontation. In addition to yelling at each other, Mitchell and K.R. started to shove each other and ended up wrestling across the room. In her written statement, K.R. indicated that Mitchell held her down, choked her, and punched her in the back during the altercation. During the State's line of questioning about her statement, K.R. testified, "I wrote what he did. I didn't write what I did because I didn't want to incriminate myself[.]" K.R. further testified that Mitchell "was not the only one that was guilty that night[]" and that if Mitchell was charged, she should have been charged as well.

{¶19} Mitchell's contention that he was trying to act as a calming force during the incident is not supported by the weight of the evidence. K.R.'s initial statement to police detailed an assault at the hands of Mitchell. Officer Markinos' observations were consistent with K.R.'s initial statement. Although K.R. testified at trial that she was responsible for escalating the situation, it is plausible that the jury found K.R.'s statement on the date of the incident more credible than certain portions of K.R.'s testimony at trial, particularly given that K.R. was adamant she did not wish to testify. "In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. In light of K.R.'s statement immediately following the incident, as well as Officer Markinos' observations, we cannot say that the jury clearly lost its way in finding Mitchell guilty.

**{¶20}** To the extent Mitchell further contends that the record does not support the conclusion that the State proved that he had a prior conviction for enhancement purposes pursuant to R.C. 2919.25(D)(3), we reiterate that the parties stipulated that Mitchell's battery conviction in Florida was an offense of violence and that K.R. qualified as a family or household member at the time of the offense. The State presented additional testimony and documentary evidence in support of this finding. *See* Discussion of Assignment of Error III. As Mitchell has not pointed to any contradictory evidence in support of his manifest weight challenge, his argument is without merit. *See* App.R. 16(A)(7).

**{¶21}** The second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ALLOWED THE TESTIMONY OF A SURPRISE WITNESS IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

**{¶22}** Mitchell contends that the trial court abused its discretion when it allowed the State to call R.B., a victim advocate who works for the Medina County Prosecutor's Office, as a witness at trial. This Court disagrees.

**{¶23}** As K.R.'s testimony was drawing to a close on the first day of trial, the trial court held a sidebar conference to discuss several questions posed by the jury. One potential question was, "Who is the father of this child?" The assistant prosecutor stated that he did not know the answer and that he had just recently found out that K.R. was pregnant. Defense counsel indicated that K.R. had not been forthcoming about the answer to that question. The trial court decided against asking the question.

{¶24} On the morning of the second day of trial, the State moved to call R.B. as a witness. R.B. had a conversation with K.R. the previous day in the hallway of the courthouse. K.R. became distraught when she realized that she would be forced to testify. During the conversation, K.R. revealed that Mitchell was the father of her unborn child. The State argued that K.R.'s statements went to credibility and explained her motivation for recanting portions of her original statement. Defense counsel objected and questioned the relevance and benefit of the testimony. The trial court indicated that it would permit the testimony and noted that Mitchell could call K.R. to testify in rebuttal.

{¶25} R.B. was the final witness to testify at trial. R.B. explained that she was helping out with K.R. because the victim advocate initially assigned to the case was out the week of Mitchell's trial. R.B. observed a range of emotions from K.R., who was experiencing a great deal of stress because she did not want to testify. K.R. was raising her voice and swearing, in addition to crying at times. R.B. testified that K.R. stated that she was pregnant on several occasions throughout the day. K.R. feared that her stress level was not good for her baby. During her conversations with R.B., K.R. identified Mitchell as the father of the baby. When R.B. was asked if she knew why K.R. did not disclose that fact during her testimony, R.B. responded that K.R. did not share that information because she did not want Mitchell to be found in violation of the no contact order that was in place.

{¶26} After the State rested, the trial court inquired of defense counsel as to whether he would be calling any witnesses. Defense counsel indicated that he had attempted to contact K.R. about testifying as a rebuttal witness but was unable to reach her. The trial court called an approximately 90-minute recess to give defense counsel additional time. When court reconvened at 12:00 p.m., the defense rested and defense counsel stated that he would not be calling any

additional witnesses. Thereafter, defense counsel renewed his Crim.R. 29 motion and asked to place a number of objections on the record. Most notably, defense counsel stated that he had just learned that K.R. would not be available until 3:00 p.m. due to work constraints and he requested a continuance until that time. The trial court responded that defense counsel had not previously indicated that K.R. would be available. Defense counsel replied that he had just learned of K.R.'s availability and that if the trial court was not willing to grant a continuance, then he wanted to place an objection on the record. The trial court denied the request for a continuance.

{¶27} Mitchell has set forth a multifaceted argument on appeal. First, Mitchell contends that the State committed a discovery violation when it sought to call R.B. as a witness when she was not identified on the State's witness list. Mitchell maintains that the trial court abused its discretion when it failed to fashion an appropriate sanction for the violation. Mitchell suggests that R.B. should not have been permitted to testify because the paternity of K.R.'s baby was not relevant to the charge pending against Mitchell. Finally, Mitchell argues that he was prejudiced when the trial court denied his request for a continuance so that K.R. could testify as a rebuttal witness. Notably, while Mitchell challenges R.B.'s testimony on a number of grounds, he has not set forth an argument that R.B.'s testimony constituted inadmissible hearsay.

{¶28} Crim.R. 16 governs discovery in a criminal case. The purpose of the discovery rule is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the judicial system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). The disclosure of witness lists is governed by Crim.R. 16(I), which states "each party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal. The content of

the witness list may not be commented upon or disclosed to the jury by opposing counsel, but during argument, the presence or absence of the witness may be commented upon."

{¶29} With respect to discovery violations, Crim.R. 16(L)(1) provides that "[t]he trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

{¶30} As an initial matter, while Mitchell attempts to couch the State's request to call R.B. as a witness as a discovery violation, this case involves a scenario where the events which served as the basis for R.B.'s testimony did not occur until the first day of trial, meaning that the State could not have identified her as a witness prior to trial. Moreover, the State did not seek to call R.B. merely to establish paternity, as suggested by Mitchell. K.R.'s credibility was a central issue in the case. The State argued that K.R.'s conversation with R.B. provided insight as to why K.R. recanted portions of her initial statement about the incident. "[A] trial court has broad discretion in the admission or exclusion of evidence and this Court will not disturb a trial court's ruling on the admission of evidence absent an abuse of discretion and material prejudice to the defendant." *Drew v. Marino*, 9th Dist. Summit No. 21458, 2004-Ohio-1071, ¶ 8. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Here, where R.B.'s testimony was probative as to a central issue in the case, we cannot say that the trial court's decision to permit R.B.'s testimony was unreasonable, arbitrary, or unconscionable.

**{¶31}** Mitchell further contends that the trial court abused its discretion and violated his due process rights when it denied his request for a continuance so that K.R. could testify as a rebuttal witness. A trial court enjoys broad discretion in ruling on a motion for continuance to call an additional witness after the defense has rested. *See State v. Tate*, 9th Dist. Summit No. 12111, 1985 WL 4384, *2 (Dec. 11, 1985). The trial court called an approximately 90-minute recess to provide Mitchell with an opportunity to contact K.R. After the recess, Mitchell indicated that the defense would not be calling any witnesses and rested. When Mitchell attempted to raise the issue thereafter, the trial court noted that Mitchell had made no mention of K.R.'s availability prior to resting his case-in-chief.[2] Mitchell effectively forfeited the issue by closing his case-in-chief and informing the trial court that he did not intend to call any witnesses. *State v. Brown*, 12th Dist. Clermont No. CA-1210, 1211, 1983 WL 6344, *1 (Dec. 30, 1983). Under these circumstances, Mitchell has not demonstrated that the trial court abused its discretion by denying his motion for a continuance.

**{¶32}** The first assignment of error is overruled.

III.

**{¶33}** Mitchell's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

---

[2] While it appears that there may have been some discussion regarding whether it would be appropriate for K.R. to testify by phone, Mitchell made no mention that K.R. would be available later in the afternoon prior to resting his case.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

PAUL M. GRANT, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.